ACKERMANN & TILAJEF, P.C.
Craig J. Ackermann, CA Bar No. 229832
Sam Vahedi, CA Bar No. 282660
1180 South Beverly Drive, Suite 610
Los Angeles, CA 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

MELMED LAW GROUP, P.C.
Jonathan Melmed, CA Bar No. 290218
1180 South Beverly Drive, Suite 610
Los Angeles, CA 90035
Telephone: (310) 824-3828
Facsimile: (310) 862-6851

Attorneys for Plaintiff and the putative settlement class

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIY BYKOV, individually and on behalf of all others similarly situated, | Case No. 2:18-CV-01691-TLN-DB [Class Action] |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| DC TRANSPORT INC., a California Transport Company; DC TRANSPORT, INC., a Texas Corporation; and DC TRANSPORTATION SERVICES, INC. dba DC TRANSPORT state of incorporation unknown, | Judge:  Hon. Deborah Barnes<br>Date:   March 15, 2019<br>Time:   10:00 a.m.<br>Room:   27 |
| Defendants. | |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 15, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 27 of the United States District Court for the Eastern District of California in Sacramento, located at 501 I St., #4200, before the Honorable United States Magistrate Judge Deborah Barnes, pursuant to Fed. R. Civ. P. 23(e), Plaintiff VALERIY BYKOV ("Plaintiff"), individually and on behalf of all others similarly situated, will and does hereby move this Court for entry of an Order:

1.      Preliminarily approving the proposed class action settlement between Plaintiff and Defendants DC TRANSPORT INC., DC TRANSPORT, INC., and DC TRANSPORTATION SERVICES, INC. dba DC TRANSPORT ("Defendants") as fair, adequate, and reasonable, based upon the terms set forth in the Parties' Joint Stipulation of Class Action Settlement Agreement ("Settlement Agreement"), including payment by Defendants of the non-reversionary Gross Settlement Amount ("GSA") of $475,000 for the Settlement "Class";

2.      Preliminarily appointing Plaintiff as the Class Representative for purposes of settlement;

3.      Preliminarily appointing Ackermann & Tilajef, P.C. and Melmed Law Group, P.C. as Class Counsel for purposes of settlement;

5.      Preliminarily approving an Incentive Award of $10,000 from the GSA for the named Plaintiff in recognition of his significant service to the Class and the excellent results obtained for the Class in this case;

6.      Preliminarily approving Plaintiff's Counsel's request for up to 25% of the GSA as attorneys' fees (i.e., up to $118,750), plus reimbursement of costs and expenses up to a maximum of $12,000;

7.      Preliminarily approving PAGA penalties in the amount of $10,000 from the GSA, of which 75%, or $7,500 shall go to the State of California's LWDA;

8.      Appointing CPT Group, Inc. as the third-party Settlement Administrator for mailing notices and for settlement administration, approving that no more than $10,000 be

deducted from the GSA for the costs of settlement administration; and

8.      Approving the proposed Class Notice and Share Form and ordering they be disseminated to the Class as provided in the Settlement Agreement.

This motion is based upon the supporting Memorandum of Points and Authorities, the Declarations of Craig J. Ackermann, Esq., Jonathan Melmed, Esq., and Valeriy Bykov, the Settlement Agreement, the Class Notice and Share Form, all other papers and exhibits filed herewith and in the Court's record in this matter, and such oral and documentary evidence as may be presented at or before the hearing on this matter.

Since the Motion is unopposed, although Defendants have indicated that it may disagree with certain factual or legal assertions made herein, Plaintiff respectfully requests relief from the normal motion page limits in order to explain to the Court the basis for the fairness and reasonableness of the proposed Settlement.

Respectfully submitted,

ACKERMANN & TILAJEF, P.C.
MELMED LAW GROUP, P.C.

Dated: February 11, 2019    By:    /s/Craig J. Ackermann_____
                                    Craig J. Ackermann, Esq.
                                    Attorneys for Plaintiff
                                    and the Settlement Class

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................... 3

    A.    The Parties ................................................................................ 3

    B.    Nature of the Action and Procedural History ................................... 3

    C.    Discovery, Mediation, and Settlement ............................................ 4

III.  SUMMARY OF THE PROPOSED SETTLEMENT ................................... 6

    A.    Settlement Consideration ............................................................ 6

    B.    Notice Process ......................................................................... 6

    C.    Disputes, Objections, and Opt-outs ............................................... 7

    D.    Release of Claims ..................................................................... 7

        1.    The Class Release ............................................................ 7

        2.    The Named Plaintiff's General Release ................................... 8

IV.   THE COURT SHOULD APPROVE THE SETTLEMENT ............................. 8

    A.    The Settlement Class Satisfies Fed. R. Civ. P. 23(a) and (b). ............... 8

        1.    Rule 23(a)(1) Numerosity. ................................................. 9

        2.    Rule 23(a)(2) Commonality ............................................... 9

        3.    Rule 23(a)(3) Typicality .................................................... 9

        4.    Rule 23(a)(4) Adequacy .................................................... 9

        5.    Rule 23(b)(3) Predominance ............................................. 11

    B.    The Settlement is Presumed to be Fair .......................................... 12

    C.    The Settlement is Fair in Light of the Litigation and Collection Risks ....... 13

        1.    Plaintiff's Willful Misclassification Claim (Labor Code section 226.8) ............................................................................ 13

        2.    Plaintiff's Derivative Non-Productive Time and Rest Break Claims ......................................................................... 15

        3.    Plaintiff's Derivative Meal Period Claim ............................... 17

4.    Plaintiff's Derivative Inaccurate Wage Statement Claim...................18

5.    Plaintiff's Derivative Reimbursement Claim ....................................20

6.    Plaintiff's Derivative UCL Claim.......................................................21

7.    Plaintiff's Derivative Waiting Time Penalty Claim ...........................21

8.    Plaintiff's PAGA Claims ...................................................................22

D.    The Settlement was the Product of Informed, Non-Collusive and
Arm's-Length Negotiations Between Experienced Counsel ......................24

E.    The Proposed Class Notice is Adequate ...........................................24

F.    Requested Attorneys' Fees and Costs Are Reasonable. ..............................25

G.    The Requested Incentive Award Is Reasonable............................................27

V.    THE COURT SHOULD APPOINT CPT GROUP, INC. AS THE
SETTLEMENT ADMINISTRATOR FOR THIS CASE .......................................28

VI.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING..........28

VII.    CONCLUSION.....................................................................................28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*Alexander, et al. v. FedEx Ground Package System, Inc.*, 765 F.3d 981, 987 (9th Cir, Aug. 27, 2014)....................................................................................................................9, 11

*Amaro v. Gerawan Farming, Inc.*, 2016 WL 4440966 at *5 (E.D.Cal. 2016)...................15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)..............................................11

*AT&T Mobile v. Concepcion*, 563 U.S. 333 (2011) ...........................................................1

*Bluford v. Safeway Stores, Inc.*, 216 Cal.App.4th 864 (2013)...........................................15

*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 ...............................17

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)...........................................................................................13

*Clayton v. Knight Transportation, Inc.*, 2012 WL 2912395 (E.D. Cal. July 16, 2012).....10

*Compare Estrada v. FedEx Ground Package Sys., Inc.*, 64 Cal. Rptr. 3d 327, 335 (2007) ....................................................................................................................................14

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177-78 (2000) .................2

*Devine & Son Trucking Co. v, EDD*, Sacramento Sup. Ct. Case No. 34-2014-0015776 ..14

*Dynamex Operations v. Superior Court*, 2018 Cal. LEXIS 3152 (Cal. Apr. 30, 2018) ....14

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) .............................................................................................................24

*Garcia v. Border Transportation Group, Inc.*, 28 Cal. App. 5th 558 (Ct. App. 2018)......14

*Garcia v. Seacon Logix, Inc.*, 238 Cal.App.4th 1476, 1485-86 (2015).............................14

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010)........................................................28

*Garrido v. Air Liquid Industrial U.S LP*, 241 Cal.App.4th 833 (Cal.Ct. App. 2015).........16

*General Tel. Co. v. Falcon*, 457 U.S. 147, 157-8, n. 13 (1982) ........................................10

*Hanlon*, 150 F.3d at 1022-23 ............................................................................................11

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) .........................9

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 (9th Cir. 2000) ..............................25

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)............................25

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008).........................................................................................13

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) ......... 12

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) ..................................... 1

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist.
    LEXIS 78314, at *18 (S.D. Cal. Oct. 6, 2008) .................................................. 28

*Martinez v. Knight Transp., Inc.*, No 1:16-cv-01730-DAD-SKO, 2018 U.S. Dist. 204462,
    at *17–18 (E.D. Cal. Dec. 3, 2018) ................................................................. 10

*McKenzie v. Federal Express Corp.*, 765 F.Supp.2d 1222 (C.D. Cal. 2011) .................... 19

*Mendoza v. Tucson School Dist. No. 1,*
    623 F.2d 1338, 1351 (9th Cir. 1980) .............................................................. 25

*Miguel Valadez, et al. v. CSX Intermodal Terminals, Inc.*, No. 15-cv-105433-EDL ........ 20

*Millsap v. Federal Express Corp.*, 277 Cal. Rptr. 807 (Cal. Ct. App. 1991) .................... 14

*Moss  v. USF Reddaway, Inc.,* Case No. ED CV15-01541 JAK (FFMx) (Dkt. 43)
    (C.D.Cal. June 30, 2017) ............................................................................... 10

*Narayan v. EGL*, 616 F.3d 895 (9th Cir. 2010) .............................................................. 14

*New Prime, Inc. v. Olivera*, Case No. 17-340 (Jan. 19, 2019) ........................................... 1

*Officers for Justice v. Civil Serv. Comm'n*, 1688 F.2d 615 (9th Cir. 1982) ...................... 13

*Officers for Justice v. Civil Service Comm'n*, 668 F.3d 615, 625 (9th Cir. 1982) ....... 12, 13

*Oman v. Delta Airlines, Inc.*, 889 F.3d 1075 (9th Cir. 2018) ........................................... 19

*Ortega v. J.B. Hunt Transp., Inc.*, No. 2:07-08336, Dkt. 280 at 6, (C.D. Cal. August 7,
    2018) .......................................................................................................... 17

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ..................................................... 24

*Performance Team Freight v. Systems, Inc.*, 241 Cal.App.4th 1233 (Cal.Ct.App. 2d Dist.
    2015) .......................................................................................................... 16

*Ridgeway v. Wal-Mart Stores, Inc.*, 2015 WL 3451966 (N.D. Cal. 2015) ...................... 15

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009) .................................. 13

*Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB,  2007 WL 3492841, at *4
    (E.D. Cal. Nov. 14, 2007) .............................................................................. 26

*Ruiz v. Affinity Logistics Corp.*, 754 F. 3d 1093, 1101-03 (9th Cir. 2014) ...................... 14

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 349 (1989) ......... 14

*Shook v. Indian River Trans. Co.*, 236 F.Supp.3d 1165, 1170-1172 (C.D.Cal. 2017)....... 16

*Singer v. Becton Dickinson and Co.*, No. 08-cv-821-IEG (BLM), 2010 WL 2196104, at *
    8 (S.D. Cal. June 1, 2010) .............................................................................. 26

*State Comp. Ins. Fund v. Brown*, 32 Cal. App.4th 188, 203 (1995)........................ 14

*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ..................................... 27

*Stolt-Nielsen v. AnimalFeeds*, 559 U.S. 662 (2010) ............................................. 1

*Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010)....................................................................................................... 26

*Tidewater Marine Western v. Bradshaw*, 14 Cal.4th 557, 577-578 (1996)....................... 16

*Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016)......... 11

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010) ............... 28

*Villalpando, et al. v. Exel Direct Inc., et al*, 303 F.R.D. 588 (N.D. Cal. Nov. 20, 2014) ... 9, 11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 1050 (9th Cir. 2002)................................. 26

*Ward v. United Airlines, Inc.*, 889 F.3d 1068 (9th Cir. 2018) ................................... 19

*Wren v. RGIS Inventory Specialists,* No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................ 13

**Statutes**

Cal. Bus. & Prof. Code §§ 17200-17210 .......................................................... 4, 21

Fed. R. Civ. P. 23 ................................................................................. passim

IWC Wage Order No. 5 ............................................................................. 17

IWC Wage Order No. 9 ............................................................................. 3

IWC Wage Order No.9 ............................................................................. 3

Labor Code § 201-203 ............................................................................. 4

Labor Code § 226(a) ............................................................................. 18, 19

Labor Code § 226.2............................................................................. 4, 15, 18, 19

Labor Code § 226.7............................................................................. 3

Labor Code § 2802............................................................................. 4, 20

Labor Code § 512............................................................................. 17

Labor Code §§ 1194, 1194.2............................................................................. 3

Labor Code §§ 226.8............................................................................. 3, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Labor Code §§ 2698-2699.5 ................................................................ 4

Labor Code §§ 2699 ........................................................................... 22

Rule 23 ......................................................................................... 8, 12

**Rules**
Fed. R. Civ. P. 23 ................................................................. 8, 13, 24, 25

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff VALERIY BYKOV ("Plaintiff") seeks preliminary approval of a wage-and-hour class action settlement between himself and defendants DC TRANSPORT INC., DC TRANSPORT, INC., and DC TRANSPORTATION SERVICES, INC. dba DC TRANSPORT ("Defendants" or "DC Transport") in the gross non-reversionary amount of **$475,000.00**, for a Settlement "Class" of approximately 92 individuals who worked as truck drivers and who are or were classified as independent contractors by Defendants in California from March 9, 2017 through the date of entry of an order granting preliminary approval to the Settlement. The settlement is embodied in the parties' Joint Stipulation of Settlement and Release of Class Action ("Settlement Agreement" or "S.A."), attached as **Exhibit A** to the Declaration of Craig J. Ackermann in support of this Motion ("Ackermann Decl.").

Due to the existence of arbitration agreements entered into by drivers with Defendants and Defendants' challenging financial situation, the Settlement Class here consists only of all drivers who possessed timely PAGA penalty claims (i.e., those who worked for Defendants in the period from one year prior to the filing of the Complaint through the present),[1] while the Class Release in this case for those Settlement Class Members runs from March 9, 2014 through the date of the entry of an order granting preliminary approval (the "Class Period") (*See* S.A., §§ X, 1; I, 11; and I, 30). Since Section 17200 of California's

---

[1] *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) (PAGA claims are not subject to arbitration, since PAGA actions are like a qui tam action and the State of California, who never signed the arbitration agreement, is the real party in interest). In *AT&T Mobile v. Concepcion*, 563 U.S. 333 (2011), the U.S. Supreme Court ruled that arbitration agreements with class action waivers are enforceable. In *Stolt-Nielsen v. AnimalFeeds*, 559 U.S. 662 (2010), the U.S. Supreme Court held that class arbitration cannot be imposed where arbitration agreements are silent on the issue. Recently, in *New Prime, Inc. v. Olivera*, Case No. 17-340 (Jan. 19, 2019), decided after the mediation and Settlement in this case, the Supreme Court ruled that truck drivers, including independent contractors, are subject to the transportation worker exclusion in Section 1 of the Federal Arbitration Act, opening up the possibility that class claims might be brought for drivers who entered into arbitration agreements, at least under federal arbitration law. However, at the time of mediation of this case on November 12, 2018, the parties assumed, based on the case law at that time, that only PAGA-timely drivers would be able to avoid having their claims compelled to individual arbitration. The Settlement here does not impact the rights of drivers not included in the Class definition.

---

Unfair Competition Law extends the statute of limitations on wage claims to four years prior to the filing of the Complaint,[2] the Class Release runs from four years prior to the filing of this case through the present. See S.A., § I, 11.

In this case, Plaintiff alleged that Defendants' drivers were misclassified as independent contractors or owner operators, when they should have been treated as W2 employees, thus triggering potential claims for (1) penalties for misclassification under Labor Code §§ 226.8 and 2699, (2) derivative claims for unpaid detention time and non-driving time (Labor Code § 1194), (3) inaccurate wage statements (Labor Code § 226), (4) non-compliant meal and rest breaks (Labor Code §§ 512 and 226.7), (5) failure to reimburse business expenses (Labor Code § 28020), and (6) waiting time penalties (Labor Code § 203). *See* Plaintiff's Complaint, Dkt. 1-1.

In defense, Defendants argues that drivers were properly classified as independent contractors; that Class Members had signed arbitration agreements arguably precluding them from proceeding in Court with all claims other than PAGA penalty claims; that Plaintiff's claims were all preempted by various federal statutes, including the federal aviation authorization administration act ("F4A"), federal truth in lending regulations ("TIL") applicable to contracting truck drivers, and federal hours of service rules as explained by the FMCSA's December 21, 2018 agency ruling on state meal and rest breaks; that Plaintiff's claims depended on fact-specific inquiries for each driver and were thus not suitable for class treatment; that Plaintiff's penalty claims were without merit because there was no willful violation of any law; that drivers spent over 90% of their time driving outside of California, so even if drivers had been classified as employees, the derivative Labor Code provisions at issue would not apply 90% of the time, if at all; and that Defendants were experiencing financial challenges, raising ability-to-pay questions. The Settlement negotiations, conducted at an all-day private mediation, took all these defenses into account.

Through this motion, Plaintiff respectfully requests that the Court enter an order preliminarily approving the Settlement Agreement and all of its terms, including the allocations for the deductions for fees, costs, settlement administration costs and the PAGA penalty amounts set forth therein; approving the proposed Notice of Proposed Class Action

---

[2] *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177-78 (2000).

Settlement ("Class Notice") and Share Form to be disseminated to Class members pursuant to the Settlement Agreement;[3] appointing CPT Group, Inc. as the Settlement Administrator; and scheduling a hearing for final approval of the Settlement Agreement and for the Court to consider Plaintiff's forthcoming motion for attorneys' fees and costs. Because the settlement is fair and reasonable, was negotiated at arm's length using an experienced mediator after extensive discovery by experienced Class Counsel, and the results of the Settlement compare favorably with similar wage and hour settlements for misclassified truckers, it is within the "zone of reasonableness" and should be preliminarily approved.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Defendants run a trucking and logistics company that delivers freight and commodities to customers in California and other neighboring states. Ackermann Decl., ¶ 4. Plaintiff Valeriy Bykov actively worked for Defendants as a truck driver in California, based in Sacramento, from August 2016 through October 2017. Bykov Decl., ¶ 4.

### B. Nature of the Action and Procedural History

On or around March 19, 2018, pursuant to California's Private Attorney General Act ("PAGA"), Plaintiff's counsel sent a letter on behalf of Plaintiffs to the LWDA and Defendants regarding Plaintiff's PAGA penalty claims. Ackermann Decl., ¶ 7. According to information supplied by Defense counsel, there are approximately 92 class members who worked within the one-year period from March 9, 2017 through the present. *Id*. at ¶ 6.

On May 3, 2018, Plaintiff filed this class and PAGA representative action lawsuit against Defendants in Sacramento Superior Court (Case No. 34-2018-232383) (Dkt. 1-1) for (1) PAGA penalties for willful misclassification (Labor Code §§ 226.8 and 2698, *et seq*.); (2) failure to pay separately and hourly for time spent by drivers on all non-driving time (Labor Code §§ 1194, 1194.2); (3) failure to provide separately paid rest periods to drivers and/or pay non-compliant rest break premiums (Labor Code § 226.7, IWC Wage Order No.9); (4) failure to provide timely meal periods and/or pay non-compliant meal period premiums (Labor Code §§ 226.7, 512, IWC Wage Order No. 9); (5) failure to reimburse

---

[3] The Notice of Proposed Class Action Settlement and Share Form are attached to the Settlement Agreement as **Exhibits 1 and 2**, respectively. (*See,* Ackermann Decl., **Exhibit A**).

business expenses, including fuel expenses (Labor Code § 2802); (6) failure to provide complete wage statements (Labor Code §§ 226 and 226.2); (7) waiting time penalties (Labor Code § 201-203); (8) Unfair Competition Law violations (Cal. Bus. & Prof. Code §§ 17200-17204); and (9) PAGA and other penalties (Labor Code §§ 2698-2699.5). Ackermann Decl., ¶ 8. On June 8, 2018, Defendants removed this action to federal court. *Id.* at ¶ 9; Dkt. 1.

### C. Discovery, Mediation, and Settlement

Following removal and prior to mediation, Class Counsel conducted significant informal discovery. Ackermann Decl., ¶ 10. This discovery, investigation, and prosecution included, inter alia, (a) over a dozen telephonic conferences with Plaintiff; (b) inspection and analysis of informal discovery documents and data produced by Plaintiff and Defendants (including the relevant arbitration agreements in the truck and equipment lease contracts, independent contract agreements with drivers, DOT logs, information about the size of the class, pay information, and other relevant documents for the Class); (c) analysis of the legal and factual positions taken by Defendants; (d) investigation into the viability of class treatment of the claims asserted in the Action; (e) analysis of potential class-wide damages, especially for the PAGA timely class members, including information sufficient to understand Defendants' potential defenses to Plaintiff's claims; (f) research of the applicable law with respect to the claims asserted in the Complaint and the potential defenses thereto; and (g) assembling and analyzing of data for calculating damages. *Id.* Defendant also provided some financial documentation showing cash flow challenges but not enough for Plaintiff's counsel to fully understand Defendant's financial position. *Id.*[4]

The Class Representative and Class Counsel vigorously prosecuted this case, and Defendants vigorously contested liability, so that the settlement negotiations were conducted at arm's length. *See* Ackermann Decl., ¶¶ 10-11. The Parties engaged in sufficient investigation and discovery to assess the relative merits of the claims of the Class

---

[4] Notably, since Defendant's financial situation and ability to fund any significant class settlement was at issue, the Settlement Agreement provided that Defendants would submit confirmatory financial documentation (tax returns, financial statements, balance sheets, etc.) to the Honorable Mitchell Goldberg, a retired federal bankruptcy judge, with considerable understanding of financial statements, balance sheets, cash flow issues, and inability-to-pay defenses. This was done at Defendants' expense, and Judge Goldberg has provided a declaration in support of the settlement as being fair and reasonable in light of Defendants' financial situation. *See* Ackermann Decl., ¶ 11, **Exhibit B** thereto.

Representative and the Class, and of Defendants' defenses to them. *Id*. Moreover, the Settlement was only reached after arm's length negotiations between Plaintiff's counsel and Defendants' counsel. *Id*. The Parties attended a full day of mediation on November 12, 2018 in Sacramento with Frances "Tripper" Ortman serving as the mediator, and the Settlement was reached after a full day of mediation. *Id*. Shortly after reaching the Settlement in principal that is now before the Court, the parties drafted and entered into a memorandum of understanding ("MOU"), in which they memorialized the key aspects of the Settlement, which were ultimately embodied in the long-form Settlement Agreement. Id.

Class Counsel maintains that the Settlement that was reached is fair and reasonable. Id. at ¶ 12. This is true because the risk-adjusted valuation of Defendants' exposure in this case, in Class Counsel's view after taking Defendants' defenses into account, amounts to approximately $491,502 for the claims asserted. *Id*. at ¶ 49. Furthermore, the reasonableness of this $475,000 settlement for 92 drivers, in light of Defendants' financial situation, was subsequently affirmed through the independent analysis of retired U.S. federal bankruptcy Judge, the Honorable Mitchell Goldberg, who reviewed Defendants' financial statements and tax returns, and opined in a sworn declaration that the settlement amount was fair and reasonable in this case given Defendants' financial situation. *See* Id. ¶¶ 11-12, **Exhibit B** (Declaration from Judge Goldberg in support of the fairness and reasonableness of the settlement). Finally, the Settlement obtained here is also fair and reasonable when viewed against the results obtained by putative Class Counsel in other similar trucker misclassification cases that have been resolved on a class-wide basis and have received approval of other courts. *See* Ackermann Decl., ¶¶ 71-72 (citing to the *Versa Logistics* settlement, where the claims of 270 truck drivers alleging misclassification were resolved for $1,050,145 and the average settlement award per class member was $2,573 and the *Absolute West* settlement where 238 truck drivers alleging misclassification and derivative claims settled for $600,000 and the average settlement award per class member was $1,517). The average settlement award here is estimated to be $3,442, after all the requested deductions are taken off, and if they are all approved. *Id*. at ¶ 71.

On or around January 29, 2019, after discussing, drafting, and circulating its terms over a period of weeks, the parties finalized and executed the long-form Settlement

Agreement, proposed Class Notice, and Share Form, for which they now seek preliminary approval from the Court. *Id*.

### III.  SUMMARY OF THE PROPOSED SETTLEMENT

#### A. Settlement Consideration

Under the terms of the Settlement Agreement ("S.A."), Defendants shall be released of all claims asserted in this action by the Settlement Class members in exchange for Defendants' agreement to pay the non-reversionary Settlement Amount of $475,000, including the requested deductions for attorneys' fees ($118,750), litigation costs ($12,000), settlement administration expenses ($10,000), the PAGA payment to the LWDA ($7,500), and Plaintiff's proposed incentive award ($10,000), as set forth in the S.A. § IV.1-2.

The remaining net settlement amount, estimated to be at least $316,750 (the "Net Settlement Amount"), will be distributed as Settlement Shares to all Class Members who do not timely opt-out following distribution of the Class Notice to the Class ("Class Participants"). The Net Settlement Amount will be distributed to Class Participants pro-rata based on the number of weeks worked by the Class Members during the Class Period as a proportion of the total weeks worked by all Class Members. S.A. § VII.2. No Claim Form submission will be required for Class Members to receive their Settlement shares. Id. § VI.3.

#### B. Notice Process

The parties have selected CPT Group, Inc., a settlement administrator that has administered thousands of Class action settlements, as the proposed Settlement Administrator. Ackermann Decl., ¶ 87. Within 14 days following the date of entry of the Court's Order Granting Preliminary Approval, Defendants will provide the Settlement Administrator with an updated list containing names, Social Security numbers, dates that Class Members contracted with Defendants, last-known addresses and phone numbers (the "Database"). S.A. § VI.2. Within 28 days from the preliminary approval date, the Settlement administrator shall mail the Class Notice and Share Form to each Class Member by first class mail. *Id*. For any Class Notice mailed to a Settlement Class Member that is returned as having been undelivered by the U.S. Postal Service, the Settlement Administrator shall perform a skip trace search and seek an address correction for such Settlement Class Member(s), and a second-Class Notice will be sent to any new or different address obtained.

*Id*. VI.3. Such Settlement Class Member(s) shall have an additional 14 days in which to Opt-Out. *Id*. The Share Form will identify the Settlement Class Member, the pay periods worked by each Settlement Class Member, as well as the estimated amount of the Individual Settlement Amount the Settlement Class Member can expect to receive once the Class Settlement becomes effective. *Id*. IV.1. In addition, Defendants will provide CAFA notice to all appropriate agencies within 10 days of the filing of this motion. *Id*. VI.5.

### C. <u>Disputes, Objections, and Opt-outs</u>

Class Members will have the opportunity to dispute information listed on their Share Forms by submitting a written challenge and any supporting documentation to the Settlement Administrator within 30 days of the Notice mailing date. *Id*. § VI.2. If Plaintiff and Defendants cannot agree, the Settlement Administrator will resolve challenges based on Defendants' records and any documents or other information presented by the challenging Class Member. *Id*. The proposed Class Notice provides that Class Members who wish to opt-out of the Settlement must send a written notice to the Settlement Administrator requesting to opt-out of the Class within 30 days of the Notice mailing date. *Id*.VI.3; **Exhibit 1**. Class Members who properly request to opt-out will not be entitled to receive a payment nor be bound by the settlement or have any right to object, appeal, or comment thereon. *Id*. Any Class Member may object to the Settlement by filing his or her objections with the Settlement Administrator within 30 days of the Notice mailing date. *Id*. VI.4. If a Class Member objects to the Settlement, the Class Member will remain a member of the Class, and if the Court approves the Settlement, the Class Member will be bound by the terms of the Settlement to the same extent as a Class Member who does not object. *Id*.

### D. <u>Release of Claims</u>

#### 1. *The Class Release*

Upon final approval of the settlement, the Class members who do not opt out shall release all claims that were alleged or reasonably could have been alleged against DC Transportation Services, Inc., dba DC Transport and all of its current or former parents, franchisors, successors, predecessors, affiliates, subsidiaries, or related entities, as well as its current or former owners, officers, directors, attorneys, agents, employees, shareholders, managers, insurers, beneficiaries, assigns (the "Released Parties") based on the facts, legal

theories, or claims contained in the Complaint, including claims under Labor Code sections 201–203, 226.2, 226, 226.7, 226.8, 512, 1194, 1194.2, 1197, 2802, 2699, *et seq.*, IWC Wage Order No. 9, sections 11 and 12, and claims under sections 17200–17204 of the California Business and Professions Code based on the foregoing (the "Released Claims") during the Class Period. S.A., §§ I.30; X.1. The Released Claims will be released for the Class for the Class Period from March 9, 2014 through the date of the entry of an order granting preliminary approval to the Settlement. S.A., §§ X, 1; I, 11; and I, 30.

### 2. *The Named Plaintiff's General Release*

Plaintiff, individually, will release the Released Parties from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses, known or unknown, against Defendants arising out of or in any way connected with their work with Defendants during the Class Period. Plaintiff, but not Class members, shall waive the provisions of Civ. Code § 1542. *See*, S.A., § X.2.

## IV.  THE COURT SHOULD APPROVE THE SETTLEMENT

Fed. R. Civ. P. 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a) and (b)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)). Here, both requirements for preliminary approval are satisfied.

### A. The Settlement Class Satisfies Fed. R. Civ. P. 23(a) and (b).

Rule 23(a) sets out four prerequisites for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Rule 23(b)(3) further provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

///

///

### 1.   *Rule 23(a)(1) Numerosity.*

Numerosity is easily satisfied because there are approximately 92 members in the Settlement Class. *See* Ackermann Decl. ¶ 6, 62; *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 members are numerous enough).

### 2.   *Rule 23(a)(2) Commonality*

While the Parties dispute whether a Class would be appropriate if the litigation were to continue, they agree, for the purposes of settlement only, that the Class may be subject certification on the common theory that Defendants' drivers were misclassified, as well as for the derivative claims for non-complaint meal and rest break, unpaid non-productive time, unreimbursed expenses, inaccurate wage statements, and waiting time penalties to former members of the Class. *See* Ackermann Decl. ¶ 63; *see also Villalpando, et al. v. Exel Direct Inc., et al*, 303 F.R.D. 588 (N.D. Cal. Nov. 20, 2014) (the Honorable Joseph C. Spero granted Plaintiff's motion for class certification to a class of delivery drivers that were misclassified by defendants as independent contractors; *see also Alexander, et al. v. FedEx Ground Package System, Inc.*, 765 F.3d 981, 987 (9th Cir, Aug. 27, 2014) (the Ninth Circuit held that a class of delivery drivers were employees of defendant under California's right-to-control test where defendant improperly misclassified them as independent contractors and upheld the district court's decision that "certified a class for plaintiffs' claims under California law"); *see also* Bykov Decl., ¶¶ 5-7; Ackermann Decl., ¶ 59.

### 3.   *Rule 23(a)(3) Typicality*

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, typicality is satisfied because Plaintiff was subject to the same misclassification and other practices as the Class, and his claims are coextensive with the Class's claims. Bykov Decl., ¶¶ 5-7; Ackermann Decl., ¶ 63.

### 4.   *Rule 23(a)(4) Adequacy*

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). Courts interpret this requirement to mean that (1) the proposed class representative and his counsel

do not have conflicts of interest with the class; and (2) the plaintiff(s) and their counsel will vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, the claims of the Class Members and the named Plaintiff are coextensive and there is no conflict between Plaintiff and his counsel, on the one hand, and any other Class Member. Ackermann Decl., ¶ 2; Bykov Decl., ¶ 7; *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-8, n. 13 (1982). Additionally, Plaintiff understands the claims and theories that were alleged in the Action and have been involved throughout the litigation. Bykov Decl. ¶¶ 6-7. Moreover, Ackermann & Tilajef, P.C. and Melmed Law Group, P.C., both separately and together, have significant experience litigating class actions and have been certified by numerous state and federal courts as competent and adequate class counsel, including in a number of trucker misclassification class actions. Ackermann Decl., ¶¶ 64, 77-85; Melmed Decl., ¶¶ 4-8.

While the parties here have stipulated to the appointment of Ackermann & Tilajef, P.C. and Melmed Law Group, P.C. as class counsel for the purposes of settlement (S.A. § III.2), courts, including several in this district, have found putative class counsel here to be adequate class counsel on contested motions for class certification in wage and hour class actions for truck drivers. *See Martinez v. Knight Transp., Inc.*, No 1:16-cv-01730-DAD-SKO, 2018 U.S. Dist. 204462, at *17–18 (E.D. Cal. Dec. 3, 2018) (order certifying class and appointing A&T as class counsel for 5,000+ drivers with claims for unpaid rest breaks and inspection time for their California routes); *Moss v. USF Reddaway, Inc.,* Case No. ED CV15-01541 JAK (FFMx) (Dkt. 43) (C.D.Cal. June 30, 2017) (order in which the Honorable John A. Kronstadt granted Plaintiff's motion for class certification and appointed A&T as lead co-counsel for the class of 540 truck drivers); *Clayton v. Knight Transportation, Inc.,* 2012 WL 2912395 (E.D. Cal. July 16, 2012) (Hon. Magistrate Beck) (recommending certification of class action for 2,000 truck drivers alleging claims for unpaid orientation time where A&T was appointed co-class counsel); 2012 WL 3638026 (E.D. Cal. Aug. 21, 2012) (order adopting findings and recommendations of Magistrate Beck) (Honorable Lawrence O'Neil); see also the cases cited in the Ackermann Decl., at ¶ 72, both of which were trucker misclassification class actions that were resolved on a class basis and where the

courts appointed Ackermann & Tilajef, P.C. and the Melmed Law Group, P.C. as co-class counsel for the settlement classes.

     5.    *Rule 23(b)(3) Predominance*

Under Rule 23 (b)(3), plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating controversy." Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members. *Hanlon*, 150 F.3d at 1022-23.

Here, common issues predominate with respect to Plaintiff's claims that Defendants willfully misclassified Class Members as independent contractors. *See Villalpando, et al. v. Exel Direct Inc., et al*, 303 F.R.D. 588 (N.D. Cal. Nov. 20, 2014) (the Honorable Joseph C. Spero granted Plaintiff's motion for class certification to a class of delivery drivers that were misclassified by defendants as independent contractors); *Alexander, et al. v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir, Aug. 27, 2014) (the Ninth Circuit held that a class of delivery drivers were employees of defendant under California's right-to-control test where defendant improperly misclassified them as independent contractors). An individual inquiry as to each of the Class Member's number of shifts worked, the average hourly rates of each Class Member, and the number damages each Class Member is entitled to, would not undercut commonality. *Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("Under *Tyson Foods* and our precedent, the need for individual damage calculations does not, alone, defeat class certification.").

Further, this class action would be a superior method of adjudication compared to a multitude of individual suits, since the claims of each Class member are likely too small to litigate outside of the Class context. *See* Ackermann Decl., ¶ 65. To determine whether the class method is superior to other means of adjudicating the claims of many people, courts consider: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the

controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Here, the superiority requirement is satisfied because it would be highly inefficient for 92 Class Members to file individual cases; certification will provide the Class with a viable method of obtaining redress for their relatively modest individual damages; and public policy supports the use of the class action device to secure the enforcement of statutes that focus on the workplace. *See* Ackermann Decl., ¶ 65; *Hanlon*, 150 F.3d at 1023.

### B. <u>The Settlement is Presumed to be Fair</u>

In reviewing what is "otherwise a private consensual agreement negotiated between the parties to a lawsuit," the district court's scrutiny should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate in all concerned." *Officers for Justice v. Civil Service Comm'n*, 668 F.3d 615, 625 (9th Cir. 1982).

A non-collusive settlement, negotiated with the involvement of a respected mediator, is entitled to "a presumption of fairness." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014). The proposed Settlement here is the product of extensive arm's length intensive negotiations, including a full day of mediation facilitated by Frances "Tripper" Ortman, an experienced mediator and attorney well respected for his work in the field of wage-and-hour class actions. Ackermann Decl., ¶¶ 10-11, 66-72. In addition, the reasonableness of this settlement, in light of Defendants' present financial condition, was affirmed through the independent analysis of retired bankruptcy judge Mitchell Goldberg, who reviewed numerous financial documents of Defendants and opined in a sworn declaration that the settlement amount was reasonable under the circumstances. Ackermann Decl., ¶ 11, **Exhibit B** thereto. Accordingly, the Settlement Agreement is entitled to a presumption of fairness. *See In re Toys "R" Us-Del FACTA Litig.*, 295 F.R.D. at 450 (finding a presumption of fairness where settlement was reached following mediation). This presumption of fairness applies with particular force where, as here, "the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory*

*Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, *6 (N.D. Cal. Apr. 1, 2011) and "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

### C. <u>The Settlement is Fair in Light of the Litigation and Collection Risks</u>

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Included in this analysis are considerations of "(1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), *citing Hanlon*, 150 F.3d at 1026.

The proposed Settlement is well within the range of reasonableness, particularly when compared to the likely outcome of prosecuting the action. In its evaluation, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation omitted). Thus, there is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering the Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009). As shown below, when weighed against the risk of further litigation, the Settlement clearly falls within the range of reasonableness. The following is a brief summary of Plaintiff's claims and Defendants' defenses.[5]

### 1.   *Plaintiff's Willful Misclassification Claim (Labor Code section 226.8)*

Plaintiff alleged that Defendants willfully misclassified Plaintiff and the other 92 current and former truck drivers in the Class as independent contractors in violation of Labor Code § 226.8(a). Section 226.8(a) of the Labor Code states: "It is unlawful for any person

---

[5] In addition to the claim-by-claim analysis set forth herein, Defendants' defenses are summarized on a global basis in the Ackermann Decl., at ¶¶ 50-61.

or employer to engage in … willful misclassification of an individual as an independent contractor." The statute defines "willful" to mean "knowingly" *Id*. at 226.8(i). Plaintiff claimed that drivers drove exclusively for Defendants and their trucks had Defendants' logos on them, and Defendants provided them with their pick up and delivery schedules, while Defendant claimed that they entered into independent contractor agreements with each Class members, the drivers had discretion to accept or reject routes and trips, and some drivers were owner operators who even owned their own trucks.

Based on the disputed facts, Defendants asserted several defenses to this claim: (1) that they did not "willfully" misclassify any drivers, because courts are split in deciding misclassification cases,[6] (2) the drivers in this case, as a factual matter, were properly classified as independent contractors (See Ackermann Decl., ¶ 54), (3) the law for the applicable standard to determine misclassification is in flux, further making a finding of willfulness unlikely[7]; (4) if the "ABC" test is applied, then all of Plaintiff's claims may be preempted by the FAAAA; and (5) courts can elect to reduce PAGA penalties where, as here, financial challenges are facing the defendant. *See* Ackermann Decl., ¶¶ 14-22. Although the maximum range of Defendants' exposure on this claim was between $460,000 to $2,300,000, depending on whether or not Plaintiff could show "willfulness" and a "pattern or practice" of misclassification, the realistic settlement value of the PAGA penalty claim,

---

[6] *Compare Estrada v. FedEx Ground Package Sys., Inc.*, 64 Cal. Rptr. 3d 327, 335 (2007) (drivers were misclassified); *Garcia v. Seacon Logix, Inc.*, 238 Cal.App.4th 1476, 1485-86 (2015) (same); *Ruiz v. Affinity Logistics Corp.*, 754 F. 3d 1093, 1101-03 (9th Cir. 2014) (same, reversing trial court decision), with *Devine & Son Trucking Co. v, EDD*, Sacramento Sup. Ct. Case No. 34-2014-0015776 (Proposed Statement of Decision and Judgment, September 9, 2016 (Hon. Paul L. Seave) ("In weighing all the factors, the balance favors the drivers being independent contractors"); *Narayan v. EGL*, 616 F.3d 895 (9th Cir. 2010) (fact issue as to whether drivers were or were not independent contractors); *State Comp. Ins. Fund v. Brown*, 32 Cal. App.4th 188, 203 (1995); *Millsap v. Federal Express Corp.*, 277 Cal. Rptr. 807 (Cal. Ct. App. 1991) (finding on summary judgment that the driver was an independent contractor).

[7] *See Dynamex Operations v. Superior Court*, 2018 Cal. LEXIS 3152 (Cal. Apr. 30, 2018) (applying the "ABC" test, which is favorable to drivers asserting misclassification claims); *cf. S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 349 (1989) (applying a multi-factor "control"-oriented test); and *Garcia v. Border Transportation Group, Inc.*, 28 Cal. App. 5th 558 (Ct. App. 2018) (holding that the *Dynamex* test only applies to claims based on the IWC Wage Orders, such as rest break claims, but not Labor Code claims for misclassification, unpaid minimum wages for non-productive time, inaccurate wage statement claims or waiting time penalty claims).

taking into account all of Defendants' defenses, was approximately $258,750. *See id.* (explaining in detail the various deductions taken for each of Defendants' defenses).

## 2. *Plaintiff's Derivative Non-Productive Time and Rest Break Claims*

Labor Code § 226.2, which became effective on January 1, 2016, codified existing law that, *inter alia*, truck drivers who are employees and who are paid on a piece-rate basis must be paid separately and hourly for rest periods and other non-productive time. *See* Labor Code § 226.2(a)(1) ("employees shall be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation."); *Bluford v. Safeway Stores, Inc.,* 216 Cal.App.4th 864 (2013) (holding that a piece-rate system of pay is illegal unless it separately pays drivers on an hourly basis for their time spent on rest periods and other non-driving duties); *Ridgeway v. Wal-Mart Stores, Inc.*, 2015 WL 3451966 (N.D. Cal. 2015) (granting summary judgment to plaintiffs on their claim that defendant's piece-rate mileage pay system of pay for truck drivers violated California law by not having separate, hourly pay for time spent on inspections, rest breaks and layovers).[8]

Here, Plaintiff claimed that by virtue of Defendants' misclassification of Plaintiff and Class members, Defendants paid their drivers on a piece-rate basis but arguably failed to pay their drivers separately and hourly for time spent on all non-driving tasks, including safety inspection time, cleaning/fueling time, and time spent on paperwork, as well as the time spent on rest periods, as discussed above. *Id*., at ¶ 24. Thus, Plaintiff contended that Defendants are liable for unpaid back wages for non-productive time and rest breaks to their former drivers that are willfully misclassified as independent contractors. *Id*.

Based on information provided by Defendant and extrapolated for the 92 members of the Class with timely PAGA claims, the total number of shifts at issue for the 92 Class members during the Class Period was estimated to be 24,426. Ackermann Decl., ¶ 27. Because the DOT logs showed that drivers were paid for loading and unloading and for stops

---

[8] One Eastern District Judge has held that an employer's failure to pay separately and hourly for rest breaks triggers the one hour per day premium payment set forth in Labor Code section 226.7, rather than a claim for unpaid rest break time itself. *See Amaro v. Gerawan Farming, Inc.,* 2016 WL 4440966 at *5 (E.D.Cal. 2016). In *Ridgeway v. Wal-Mart Stores, Inc.*, however, after a liability finding for Plaintiffs on summary judgment and a trial on damages, the Court awarded unpaid time for rest breaks, not rest break premiums under Labor Code section 226.7. *See Ridgeway v. Wal-Mart Stores, Inc.*, 2017 U.S. Dist. LEXIS 10510, at *4, 12 (N.D.Cal. Jan. 25, 2017).

on an hourly basis, the remaining non-productive time consisted of approximately 40 minutes per day for pre- and post-trip inspections. *Id*. Assuming a minimum wage of approximately $10 per hour, Defendant's maximum exposure on this claim, including the rest break premium claim, calculated at one hour of pay per day at the stepped up rate of $27.64 (the average reverse engineered regular rate of pay) can be calculated as follows: (a) the non-productive time claim: 24,426 shifts * .67 hours (40 minutes per shift) * $10 per hour = $163,656, plus (b) the rest break premium claim: 24,426 shifts *1 hour per shift * $27.64 per hour = $675,134. Id. The combination of these two amounts is $838,790. *Id*.

However, Defendants asserted numerous defenses to this claim, including (1) the drivers were properly classified and Labor Code section 226.2 only applies to employees, not independent contractors, (2) the drivers entered into arbitration agreements that would likely result in all claims other than PAGA claims being sent to individual arbitration,[9] (3) the California Labor Code does not apply extraterritorially, except on days when drivers begin and end in California, so that Defendants would have no obligation to pay for non-productive time or rest breaks hourly and separately on 90% of the shifts at issue in this case, which were driven outside of California,[10] (4) the FMCSA issued an agency ruling on December 21, 2018 stating that state meal and rest break laws are preempted for truckers subject to the Department of Transportation's Hours of Service rules,[11] and (5) Plaintiff

---

[9] *See* footnote 1, above. *See also Performance Team Freight v. Systems, Inc.*, 241 Cal.App.4th 1233 (Cal.Ct.App. 2d Dist. 2015) (collecting cases before the New Prime decision was issued and reversing trial court's ruling denying motion to compel individual arbitration in trucker misclassification case). Even after *New Prime*, the risk remains that arbitration agreements may be enforceable under state law. See Cal. Code of Civil Procedure, Section 1281; *see also Garrido v. Air Liquid Industrial U.S LP*, 241 Cal.App.4th 833 (Cal.Ct. App. 2015) (discussing whether the California Arbitration Act would apply to trucker arbitration agreements if the Federal Arbitration Act does not).

[10] *See Tidewater Marine Western v. Bradshaw*, 14 Cal.4th 557, 577-578 (1996) (Labor Code may apply extraterritorially in limited circumstances where employee of a California employer travels outside the State during a workday but returns to California at the end of the workday); *Shook v. Indian River Trans. Co*., 236 F.Supp.3d 1165, 1170-1172 (C.D.Cal. 2017) (holding that the California Labor Code did not apply to drivers who worked primarily outside of California, but only applied to their work within the State, which was, in that case, speculative since no evidence of it was adduced at trial).

[11] *See* FMCSA, *California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption*, Dkt. No. FMCSA-2018-0304, at p. 1 (12/21/18), https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/regulations/440601/california-meal-and-rest-break-rules-preemption-determination.pdf ("FMCSA Preemption

---

would have difficulty certifying this case due to the varied driving schedules and the choice of law issues that would arise in attempting to certify the Class.[12] Ackermann Decl., ¶ 28.

Taking into account the risk of losing on the underlying misclassification claim (50%), an additional risk factor that 90% of the shifts of the drivers were driven outside of California, where the Labor Code likely does not apply (a 90% discount) (see footnote 9), and an additional 50% discount for the risk of the arbitration agreements being enforceable, retroactive federal HOS preemption based on the December 21, 2018 FMCSA agency letter and/or potential non-certification of the rest break claims, the risk adjusted realistic settlement value of these claims was $20,969.75. *See* Ackermann Decl., ¶ 29.

### 3. *Plaintiff's Derivative Meal Period Claim*

Under Labor Code § 512(a), an employer has an obligation "to provide" timely meal periods to employees. Sections 11(A) of the applicable IWC Wage Order No. 5 states, "No employer shall employ any person for a work period *of more than five hours* without a meal period of not less than 30 minutes." (emphasis added). Labor Code § 226.7(c) imposes liability of one hour of pay per day "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, a statute or regulation, standard, or order of the Industrial Welfare Commission". To provide a compliant meal break, an employer must (1) relieve employees of all duty for thirty-minute meal periods (2) on or before the fifth and tenth hours of their shifts. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1017, 1034 (2012).

---

Order"). In 2008, the FMCSA rejected a similar petition from the ATA to preempt state meal and rest break laws based on federal Hours of Service (HOS) requirements. See *Notice of Rejection of Petition for Preemption*: "Meal Breaks and Rest Breaks for Commercial Motor Vehicle Drivers," 73 Federal Register 79204-01 (FMSCA, 12/24/08), https://www.federalregister.gov/documents/2008/12/24/E8-30646/petition-for-preemption-of-california-regulations-on-meal-breaks-and-rest-breaks-for-commercial (the FMCSA rejected the petition from a number of trucking companies seeking to nullify California's meal and rest break laws based on HOS preemption, reasoning that "[t]he California meal break statute [Cal Labor Code § 512] and the corresponding rules in § 11090(11)-(12) are not regulations "on commercial motor vehicle safety" and thus do not meet the threshold requirement for consideration under 49 U.S.C. § 31141.").

[12] *See Ortega v. J.B. Hunt Transp., Inc.*, No. 2:07-08336, Dkt. 280 at 6, (C.D. Cal. August 7, 2018) (decertifying trucker rest break class action where drivers drove many routes out of state and it would be difficult to ascertain if they spent more than 3.5 hours in California, which would trigger a rest break obligation).

Here, Plaintiff claimed that by virtue of Defendants' misclassification, Defendants neither provided a formal meal break policy authorizing Plaintiff and the Class to take 30-minute off duty meal breaks on or before the fifth hour of their shifts, nor did they keep accurate meal break records for each employee during the Class Period. Ackermann Decl., ¶ 32. Therefore, if Plaintiff were to prevail on their misclassification claim, Plaintiff could argue also that Defendants failed to provide compliant meal breaks to the Class. Using the same information as provided for the rest break analysis, Defendants' maximum exposure to the meal break claim can be calculated as follows: the meal break premium claim: 24,426 shifts *1 hour per shift * $27.64 per hour = $675,134. *See id.* at ¶ 33. However, Defendants could assert all the same defenses to this claim as to the rest break claim. *Id.*

Taking into account the risk of losing on the underlying misclassification claim (50%), an additional risk factor that 90% of the shifts of the drivers were driven outside of California, where the Labor Code likely does not apply (a 90% discount) (see footnote 9), and an additional 50% discount for the risk of the arbitration agreements being enforceable, retroactive federal HOS preemption based on the December 21, 2018 FMCSA agency letter and/or potential non-certification of the rest break claims, the risk adjusted realistic settlement value of the meal break claims was $16,878.35. *See* Ackermann Decl., ¶ 34.

### 4. *Plaintiff's Derivative Inaccurate Wage Statement Claim*

California Labor Code § 226(a) provides, in pertinent part:

"Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, … an accurate statement in writing showing (1) gross wages earned, (2) total hours worked by the employee … [and] (5) net waged earned…"

Furthermore, under Labor Code § 226.2, if it applies, employees' wage statements must separately state the total hours of rest periods; the rate of compensation for such periods; and the gross wages paid for those rest periods each pay period. *See* Labor Code § 226.2(a)(2). Labor Code § 226.2(a)(2)(B) also requires that the wage statements issued to employees include the total hours of nonproductive time, the rate of compensation for such time, and the gross wages paid for such time for that time period. Furthermore, an employee

is deemed to suffer injury if the employer fails to provide accurate and completely information as required. *See* Labor Code § 226.2(e)(2)(B).

Here, Plaintiff contended that by virtue of misclassifying Class members as independent contractors, Defendants violated Labor Code §§ 226(a) and 226.2 by paying them on a piece-rate basis, while failing to issue wage statements to them that included their total hours worked during the pay period or the time spent on rest breaks and non-driving tasks, such as inspections. Ackermann Decl., ¶ 35; *McKenzie v. Federal Express Corp.*, 765 F.Supp.2d 1222 (C.D. Cal. 2011) (wage statements violated California Labor Code by not including, *inter alia*, total hours worked giving rise to claims under both Section 226 and PAGA penalties). Under Labor Code section 226(e), employees can recover penalties for wage statement violations in the amount of $50 for an initial pay period with a violation, and $100 for subsequent pay periods with violations, up to a maximum penalty per employee of $4,000. Here, there are 92 current and former drivers with timely Section 226 claims. Assuming the maximum penalty for all 92 drivers, Defendants' maximum exposure would be $368,000, calculated as follows: 92 * $4,000 = $368,000. Ackermann Decl., ¶ 36.

However, Defendants have asserted potential defenses to this claim, including that (1) their drivers were not employees but were properly classified as independent contractors and, therefore, were not entitled to receive wage statements; (2) that Defendants' arbitration agreements would eviscerate any class-wide claims under Labor Code section 226; and (3) that since the majority of each drivers' pay period was spent driving outside of California, drivers, even if employees, may not be entitled to receive wage statements. *See* Ackermann Decl., ¶37; *see also Oman v. Delta Airlines, Inc.*, 889 F.3d 1075 (9th Cir. 2018) (certifying to the California Supreme Court the issue of whether California based employees who spend the majority of their pay period outside of California are entitled to receive wage statements per Labor Code section 226); *Ward v. United Airlines, Inc.*, 889 F.3d 1068 (9th Cir. 2018).

Taking a 50% discount for the risk of losing on misclassification (leaving $184,000), another 50% off for the risk of the class claims being compelled to individual arbitration (leaving $92,000), and another 90% off for the risk that, since 90% of the routes here were driven outside the State of California, there is a strong likelihood that California wage

statements need not be issued to the drivers under *Tidewater* and its progeny, the risk adjusted settlement value of this claim is $9,200. Ackermann Decl., ¶ 37.

### 5.    *Plaintiff's Derivative Reimbursement Claim*

Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." By virtue of the misclassification of Plaintiff and the Class as independent contractors when they should have been classified, in Plaintiff's view, as employees, Defendants failed to reimburse Plaintiff and the Class for their business-related expenses that were necessary to perform their jobs, including gas mileage expenses, insurance premiums for their trucks, as well as for work-related cell phone usage and expenses. Ackermann Decl., ¶ 38. As a result, throughout the Class Period, Plaintiff and the Class incurred hundreds of dollars per month in unreimbursed expenses (mostly gas expenses) for which they are arguably entitled to be reimbursed, plus interest. *Id*.

Defendants' failure to pay for or reimburse the work-related business expenses of Plaintiffs and Class members arguably violated non-waivable rights secured to Plaintiff and Class members by Labor Code §2802. *See* Labor Code §2804. Plaintiff and similarly situated Class members are entitled to reimbursement for these necessary expenditures, plus interest and attorneys' fees and costs, under Labor Code § 2802(c). Ackermann Decl., at ¶ 35.

However, Defendants argued that (1) drivers were properly classified as independent contractors, such that Labor Code section 2802 did not apply, (2) arbitration agreements with the drivers would eliminate any ability for these claims to be pursued on a class-wide basis, (3) Labor Code section 2802 would not apply to the 90% of routes and shifts that were driven outside of California, and (4) reimbursement claims for independent contractors are preempted by 49 C.F.R. Section 376.12 (d), (e), (i), and (j). *See Miguel Valadez, et al. v. CSX Intermodal Terminals, Inc.*, No. 15-cv-105433-EDL (defendant granted summary judgment on plaintiff truck driver's reimbursement claim (Docket #76)). In *Valadez*, the Honorable Elizabeth D. Laporte found that reimbursement claims for acquiring and/or maintaining vehicles, fuel and maintenance, insurance reimbursements, cargo and property damage, and escrow funds are preempted when brought by drivers who had signed

independent contractor agreements. Therefore, the reimbursement claims of Plaintiff and Class Members could be limited to only cell-phone expenses. *See* Ackermann Decl., ¶ 40.

Defendants' maximum exposure on this claim could be calculated as follows: 92 drivers * $700 per month on gas/phone expenses * 60 months (from March 2014 to preliminary approval) = $3,864,000. However, Plaintiff took a 50% discount for the risk of losing the misclassification issue (taking the claim down to $1,932,000), another 50% discount for the risk of losing a motion to compel individual arbitration (taking the claim down to $966,000), another 90% off since only 10% of the routes/shifts were driven in California (taking the claim down to $96,600), and another 50% off for the risk that this claim may be preempted by the federal Truth In Lending regulations, as held by Magistrate Laporte, taking the claim's value for settlement purposes down to $48,300. *Id*. at ¶ 41.

### 6. *Plaintiff's Derivative UCL Claim*

In California, wage and hour claims may be brought under the Unfair Competition Law ("UCL" – Cal. Bus. & Prof. Code §§ 17200-17210). Unfair competition includes "any unlawful, unfair or fraudulent business act or practice," which courts have held includes Labor Code violations. A remedy under the UCL does not preclude any other available remedies under state law.[13] Plaintiff's operative Complaint alleged that by failing to pay Class members for non-productive time, premiums for non-compliant meal and rest breaks, reimbursement of business expenses and committing the above-described Labor Code violations, Defendants engaged in unlawful, unfair, and/or fraudulent business practices and is liable for restitution to the Class members. *See* Ackermann Decl., ¶ 42. Moreover, this cause of action lengthens the statute of limitation of the class wage-related and premium claims to 4 years.[14] The damages for this claim are coextensive with the analysis above for the non-penalty claims.

### 7. *Plaintiff's Derivative Waiting Time Penalty Claim*

Section 201-203 of the Labor Code provide that former employees must be paid all wages due upon termination of employment. If departing employees do not receive all

---

[13] § 17205.

[14] *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000).

wages due, then they can recover penalties up to thirty days' worth of wages against their former employer. Ackermann Decl., ¶ 43. By virtue of their willful misclassification of drivers, Plaintiff asserted that Defendants failed to pay Plaintiff and those approximately 15 members of the Class whose employment with Defendants ended, and who are no longer employed by Defendants, for their time spent on statutory rest breaks and the other Non-Driving Tasks prior to or upon termination or separation from employment with Defendants as required by California Labor Code §§ 201 and 202. *Id*. Defendants' maximum exposure for this claim can be calculated as follows: 15 former drivers in the Class * $180 per day * 30 days = $81,249. *Id*. However, Defendants asserted the same defenses, including that the drivers were properly classified, that arbitration agreements would preclude the class-wide bringing of the claim, that the claim may not be actionable since 90% of routes were driven outside of California, that Defendants did not "willfully" fail to pay any final wages, and that there may not be numerosity sufficient to certify the subclass on this claim. *Id.*, at ¶¶ 43-44. Plaintiff assessed that a 50% reduction was appropriate for the combination of these defenses, bringing the settlement value of this claim down to $40,624. *Id*.

### 8. *Plaintiff's PAGA Claims*

Plaintiff further argued that he and the other Class members were entitled to penalties under the Private Attorney General Act of 2004 ("PAGA" - Labor Code §§ 2699-2699.5). *See,* Ackermann Decl., ¶ 46. PAGA allows an aggrieved employee to bring suit against an employer for violations of most Labor Code provisions. The statute of limitations for PAGA suits is one year prior to the sending of the LWDA letter. The penalties available under PAGA are those provided in the underlying Labor Code provision that is violated or, if no penalty is listed, those provided by PAGA itself. Where the Labor Code does not provide for a penalty, PAGA establishes a discretionary civil penalty of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation.[15] For any civil penalties collected under PAGA,

---

[15] § 2699(f). Wherever the Labor Code gives the Labor and Workforce Development Agency discretion to asses a civil penalty, a court is authorized to exercise the same discretion. § 2699(e)(1).

seventy-five percent of the penalties are distributed to the LWDA for enforcement and education, and twenty-five percent is distributed to the aggrieved employees. *Id.*, at ¶ 47.

Plaintiff alleged that based on the foregoing underlying Labor Code violations, Plaintiff and the other Class members are, in addition to other remedies, entitled to civil penalties under PAGA. Ackermann Decl., ¶ 48. This cause of action opens Defendants to additional penalties for their Labor Code violations, in additions to attorneys' fees and costs. *Id.* On a non-stacked basis, Plaintiff calculated the additional PAGA penalties available to the State and the Class as follows. There were an estimated 4,885 pay periods in the period covered by PAGA for the 92 current and former members of the class. The initial pay period was calculated as 92 * $100, or $9,200, while the subsequent pay periods were calculated at the stepped-up rate of $200 * 4,793 remaining pay periods = $958,600. Thus, the total non-stacked PAGA penalties at issue amounted to $967,800. *Id.*

However, as with the other claims, Defendants asserted various defenses to the PAGA penalty claims, including that (1) drivers were properly classified as independent contractors, so Labor Code provisions may not apply, (2) that 90% of the routes were driven outside of California, so PAGA penalties based on any of the other Labor Code provisions that apply in California would be unlikely to be awarded, and (3) that each of its other defenses to the underlying claims would apply (except for the arbitration defense), and (4) that given its financial challenges, a court would likely reduce any PAGA penalties awarded by a substantial amount. Plaintiff applied a global deduction of 90% to take into account all of these defenses, valuing the PAGA penalty claims, other than the misclassification PAGA claim, at $96,780. *See* Ackermann Decl., ¶ 48.

Accordingly, Defendants' realistic exposure, taking into account all of its defenses to the claims asserted, amounted to **$491,501**, including: $258,750 (Labor Code section 226.8 misclassification claim) + $20,969.75 (Labor Code section 226.2 rest break and non-productive time claim) + $16,878.35 (Labor Code section 512 meal break claim) + $9,200 (Labor Code section 226 wage statement claim) + $48,300 (Labor Code section 2802 reimbursement claim) + $49,624 (Labor Code section 203 waiting time penalty claims) + $96,780 (PAGA claims, other than for misclassification). Ackermann Decl., ¶ 49. The global settlement amount obtained here for the Class of $475,000 represents 97% of the risk-

adjusted settlement value of the claims, in the view of Class Counsel. It is thus fair and reasonable, particularly given Defendant's financial situation. *Id.*

### D.  The Settlement was the Product of Informed, Non-Collusive and Arm's-Length Negotiations Between Experienced Counsel

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining as it was here. See *Hanlon*, 150 F.3d at 1027. As the United States Supreme Court has held, "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms- length bargaining…" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999). Here, the Settlement was a product of extensive informal discovery and a full day of mediation. Ackermann Decl., ¶¶ 10-11, 66-67. In addition, the parties are represented by skilled and experienced counsel with extensive backgrounds in complex litigation and experience litigating and settling similar wage and hour class actions. *Id.* at ¶¶ 77-85; Melmed Decl., ¶¶ 4-8. The view of the attorneys actively conducting the litigation is entitled to significant weight in deciding whether to approve the settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 128 (2008) (court must take into account "the experience and view of counsel") (internal quotation and citation omitted).

Plaintiff's counsel shares the view that this settlement is fair, adequate, and reasonable, in the best interests of the Class Members, and should be preliminarily approved. Ackermann Decl., ¶¶ 49, 66-71; Melmed Decl., ¶ 13. If the Settlement is approved, the Class Members here will enjoy substantial monetary recovery amounting to an average recovery per class member of approximately **$3,442**. *Id.*, at ¶¶ 71-72. Such recoveries are well within the "zone of reasonableness" for settlements of similar cases. *See id.* (citing two examples of similar settlements granted final approval in virtually identical class cases for truckers).

### E.  The Proposed Class Notice is Adequate

Fed. R. Civ. P. 23 (c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the definition of the

- 24 -

class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Class Notice attached as **Exhibit 1** to the Settlement Agreement fully complies with due process and Fed. R. Civ. P. 23. The Class Notice will also be translated into Russian and distributed in both English and Russian for the benefit of the many Russian-speaking Class members. The Class Notice provides specifics regarding the date, time, and place of the Final Approval Hearing, and informs Class Members that they may enter an appearance through counsel. The Notice informs Class Members how to exercise their rights and make informed decisions regarding the proposed Settlement Agreement and tells them that if they do not request to be excluded, they will receive payment, be subject to the Class Release of claims, and the judgment will be binding upon them. The Notice describes the terms of the Settlement Agreement, informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member. The Proposed Class Notice is more than adequate to put Class Members on notice of the Settlement Agreement. *See, e.g., Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the… settlement" satisfies standards).

### F.  Requested Attorneys' Fees and Costs Are Reasonable.

The Settlement contemplates that Plaintiffs will seek attorneys' fees equal to 25% of the gross Settlement amount (*i.e.*, $118,750.00) (S.A. § IV.1-2). The Ninth Circuit has held that 25 percent of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method. *See Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers*, 904 F.2d at 1311 (recognizing "25 percent standard award"). In fact, district courts have often granted—and the Ninth Circuit has affirmed—awards of attorneys' fees above 30 percent. (*See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 (9th Cir. 2000) (affirming fee award of 33 1/3% of fund); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding attorneys' fees equal to 33% of settlement fund).

Indeed, in cases where the common fund is under $10 million—as is the case here—courts routinely award attorneys' fees above the 25% benchmark. *See Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1127 (C.D.Cal. 2008) (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark); *Stuart v. RadioShack Corp*., No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (fee award of 1/3 of the total settlement was "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits."); *Singer v. Becton Dickinson and Co*., No. 08-cv-821-IEG (BLM), 2010 WL 2196104, at * 8 (S.D. Cal. June 1, 2010) (approving fee award of 33.33% of the common fund); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05 cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ("[f]ee awards in class actions average around one-third of the recovery."); *Martin v. FedEx Ground Package System, Inc*., No. C 06-6883 VRW, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) (approving fees of 1/3). Nevertheless, Class Counsel will merely seek to recover the 25% benchmark fee.

The fees sought are reasonable in light of the result achieved for the Class, which amounts to an average award of per Class Member of $3,442 or more, and compares favorably with amounts deemed fair, adequate and reasonable in similar settlements under similar circumstances. Ackermann Decl., ¶ 72. Moreover, litigating wage and hour class actions is inherently risky, especially where preemption is a possibility, and where some courts have denied class certification. *Id*. at ¶ 70.

If the Court grants preliminary approval, Class Counsel anticipates filing a Motion for Attorneys' Fees and Costs that will be scheduled to be heard concurrently with the Motion for Final Approval and Fairness Hearing following the notice process. Class Counsel will file the fees motion before the expiration of the objection period. *See In Re Mercury Interactive*, 618 F.3d 988 (9th Cir. 1010) (fees motions in class actions should be filed before the objection deadline passes). Class Counsel will submit briefing supporting the attorneys' fees request and a summary of the time and itemized costs expended on this case, in order to provide a lodestar cross-check to further confirm that the 25% fees requested is reasonable. See *Vizcaino v. Microsoft Corp*., 290 F.3d 1043 1050 (9th Cir. 2002).

//

### G. The Requested Incentive Award Is Reasonable.

Named plaintiffs "are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977. Courts may also consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff requests an incentive award of $10,000, to recognize his significant contributions to the Class, the reputational risks he undertook, the time and efforts expended on behalf of the Class, his broader waiver of claims outside of the scope of the Class claims released by the Class in the Settlement, his acceptance of the financial risk in pursuing this litigation, his potential diminished job prospects in the trucking industry, and the significant accomplishments of this case. Bykov Decl., ¶¶ 7-9. Specifically, he provided factual background for the mediation brief and Class Complaint; spoke with other Class members about their experiences with Defendants; reviewed the Complaint; provided documents about Defendants' compensation plan; participated in phone calls to discuss litigation and settlement strategy; attended the all-day mediation; and reviewed the settlement documents. *Id.* He has spent approximately 90 hours on this case to date. *See* Bykov Decl., ¶ 12.

Given Plaintiff's strong commitment to the Class, the $10,000 requested Incentive Award falls well within the range of reasonable incentive payments awarded to Class Representatives in similar class actions. *See e.g. Louie v. Kaiser Found. Health Plan, Inc.*,

No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18 (S.D. Cal. Oct. 6, 2008) (approving "$25,000 incentive award for each Class Representative" in wage an hour settlement); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 493 (E.D. Cal. 2010) (approving service awards in the amount of $12,000 each from a $300,000 settlement fund in a wage/hour class action); *Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class").

## V.    THE COURT SHOULD APPOINT CPT GROUP, INC. AS THE SETTLEMENT ADMINISTRATOR FOR THIS CASE

The parties propose that the Court appoint CPT Group, Inc. to serve as the Settlement Administrator. *See* Ackermann Decl. ¶ 87. CPT Group, Inc. is experienced in administering class action settlements, see www.cptgroup.com, and has estimated its fees for this settlement, not to exceed $10,000. *Id.,* **Exhibit C** (CPT's bid for this case).

## VI.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

The last step in the approval process is the formal hearing, whereby proponents of the settlement may explain and describe its terms and conditions and offer argument in support of approval, and Class members or their counsel may be heard in support of or in opposition to the Settlement. Plaintiff proposes that the Court schedule a hearing for final approval of the settlement, including Plaintiff's motion for attorneys' fees and costs, and for final approval of the service award, for a date in early August 2019.

## VII.    CONCLUSION

For the stated reasons, Plaintiff's motion for preliminary approval should be granted.

ACKERMAN & TILAJEF, P.C.
MELMED LAW GROUP, P.C.


Dated: February 11, 2019         */s/ Craig Ackermann*
                                 Craig Ackermann, Esq.
                                 Jonathan Melmed, Esq.
                                 Counsel for Plaintiff and the Settlement
                                 Class