UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIY BYKOV,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DC TRANSPORTATION SERVICES, INC.,<br><br>　　　　　Defendant. | No. 2:18-cv-1691 DB<br><br><br>ORDER |

Each of the parties in the above-captioned case has consented to proceed before a United States Magistrate Judge. See U.S.C. § 636(c). Accordingly, this matter has been reassigned to the undersigned for all purposes. (ECF No. 12.) This action came before the court on December 20, 2019, for hearing of plaintiff's unopposed motion for final approval of class action settlement and motion for attorney's fees. (ECF No. 28.) Attorney Craig Ackermann appeared telephonically on behalf of the plaintiff. And attorney Timothy Nelson appeared in person on behalf of the defendant.

Upon consideration of the arguments on file and those made at the hearing, and for the reasons set forth on the record at that hearing and below, the court will grant plaintiff's motion for final approval of class action settlement and motion for attorney's fees as articulated below.

////

**BACKGROUND**

Plaintiff commenced this action on May 3, 2018, by filing a complaint in the Sacramento County Superior Court. (ECF No. 1 at 22.[1]) The complaint alleged the following claims against defendant DC Transportations Services, Inc., dba DC Transport: (1) willful misclassification of plaintiff and his fellow drivers as independent contractors; (2) failure to pay their current and former truck drivers in California separately and on an hourly basis for their time spent taking their statutory rest periods and on their pre- and post-trip inspections, loading/unloading time, time spent cleaning their trucks, time spent fueling their trucks and on time spent on work-related paperwork (collectively referred to as "Non-Driving Tasks"); (3) failure to provide paid rest breaks and rest break premiums to their current and former truck drivers in California; (4) failure to provide meal periods and pay missed meal period premiums to its current and former truck drivers in California; (5) failure to reimburse business expenses including gas mileage, insurance coverage, and personal cell phone expenses, incurred by their current and former truck drivers in California; (6) failure to provide complete wage statements to their current and former truck drivers in California within the one year prior to the filing of the complaint; (7) failure to pay all wages due to former employees based on the foregoing; (8) unfair business practices based on the foregoing; and (9) California's Private Attorneys General Act ("PAGA") and other penalties based on the foregoing. (Id. at 25.)

Defendant filed an answer on June 7, 2018. (Id. at 55-67.) On June 8, 2018, defendant removed the matter to this court pursuant to diversity jurisdiction and the Class Action Fairness Act of 2005. (Id. at 5.) On December 11, 2018, the parties advised the court they had reached a settlement. (ECF No. 12.) On February 11, 2019, plaintiff filed a motion for preliminary approval of a class action settlement. (ECF No. 16.) On February 25, 2019, defendant filed a statement of non-opposition. (ECF No. 17.)

On March 12, 2019, the court issued an order addressing some concerns with the proposed Notice of Proposed Class Action Settlement and Hearing Date for Court Approval ("Notice").

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

(ECF 18.) Plaintiff was given an opportunity to file a revised Notice and the hearing of plaintiff's motion was continued to March 22, 2019. On March 21, 2019, plaintiff filed a revised Notice. (ECF No. 19-1.) Defendant did not object to the revised Notice. (ECF No. 19-3.)

On March 29, 2019, the court granted preliminary approval of the settlement. (ECF No. 21.) The order certified a class of 92 truck drivers consisting of:

> Plaintiff and all other California residents who work or worked as truck drivers and who are or have been classified as independent contractors by Defendants from March 9, 2017 through the date of the entry of this order granting preliminary approval.

(Id. at 7.) And the terms of the settlement provided for:

> a. a non-reversionary Settlement Amount of $475,000 for an estimated 92 current and former truck drivers of defendant;
>
> b. the Class Representative enhancement payment to the named Plaintiff of $10,000;
>
> c. Court approved attorneys' fees to Class Counsel of up to $118,750.00, representing 25% of the Settlement Amount;
>
> d. Court approved litigation costs to Class Counsel of up to $12,000;
>
> e. Fees and Costs of the Settlement Administrator of up to $10,000; and
>
> f. Payment of $7,500 to the California Labor & Workforce Development Agency for its portion of the PAGA penalties.

Id.

The court also advised the parties with respect to "concerns going forward." (Id. at 9.) Specifically, the parties were advised to be cognizant of and address: (1) the proposed settlement's "clear sailing agreement"; (2) plaintiff's $10,000 incentive award; (3) the production of discovery; (4) the potential for known class members whose notice was returned as undeliverable to be bound by the settlement; and (5) the court's intention to not maintain jurisdiction to enforce the terms of the settlement. (Id at 10.)

On June 13, 2019, the parties filed a stipulation to amend the preliminary approval of the settlement. (ECF No. 23.) On July 10, 2019, the court entered the parties' stipulation. (ECF No.

////

25.) Pursuant to that stipulation and order the class was amended to consist of 123 truck drivers to include:

> Plaintiff and all other California residents who work or worked as truck drivers and who are or have been classified as independent contractors by Defendants from January 1, 2018 through the date of preliminary approval.

(Id. at 10.) Plaintiff's attorney's fees were also capped at a reduced amount of 20% of the gross settlement amount. (Id. at 11.)

On August 30, 2019, plaintiff filed the pending motion for attorney's fees and costs. (ECF No. 26.) And on November 22, 2019, plaintiff filed the pending motion for final approval of the class action settlement. (ECF No. 27.) The matter came for hearing before the court on December 20, 2019. (ECF No. 28.) No one appeared at the December 20, 2019 hearing to oppose either motion nor has any written opposition been filed.

## LEGAL STANDARDS

The settlement of class actions is supported by strong judicial policy. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). However, "[t]o guard against th[e] potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 946 (9th Cir. 2011).

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)). "Where, as here, the parties reach a settlement before class certification, the district court must apply a 'higher standard of fairness.'" Cotter v. Lyft, Inc., 176 F.Supp.3d 930, 935 (N.D. Cal. 2016) (quoting Hanlon, 150 F.3d at 1026). In this context, "'courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.'" In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, 895 F.3d 597, 606 (9th Cir. 2018) (quoting Staton v. Boeing Co., 327 F.3d 938, 952

4

(9th Cir. 2003)). "The factors and warning signs identified in Hanlon, Staton, In re Bluetooth, and other cases are useful, but in the end are just guideposts." Id. at 611.

"District courts have interpreted Rule 23(e) to require a two-step process for the approval of class action settlements: 'the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.'" In re High-Tech Emp. Antitrust Litig., No. 11-cv-02509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014) (quoting Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

"At the final approval stage, the primary inquiry is whether the proposed settlement is 'fair, adequate, and free from collusion.'" Carlin v. DairyAmerica, Inc., 380 F.Supp.3d 998, 1008-09 (E.D. Cal. 2019) (quoting Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012)). Although the assessment "will naturally vary from case to case," courts usually weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

In re Bluetooth, 654 F.3d at 946 (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)). "'The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case.'" In re Volkswagen, 895 F.3d at 611 (quoting Officers for Justice, 688 F.2d at 625.

**ANALYSIS**

**I.     Class Certification**

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation." Id. The "specifications of the Rule . . . demand undiluted, even

////

heightened, attention in the settlement context." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997).

### A. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Courts have found the requirement satisfied when the class comprises of as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket." Goodwin v. Winn Management Group LLC, No. 1:15-cv-0606 DAD EPG, 2017 WL 3173006, at *5 (E.D. Cal. July 26, 2017).

Here, plaintiff is seeking to certify a class of 123 members. (Pl.'s Mot. FA (ECF No. 27) at 11.) The court originally found the numerosity requirement was satisfied by a proposed class of 92 members. (ECF No. 21 at 4.) Given that the proposed class has now larger, the court finds that the numerosity requirement is satisfied.

### B. Commonality

The requirement for commonality is satisfied when "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he key inquiry is not whether the plaintiffs have raised common questions," but "whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Arredondo v. Delano Farms Co., 301 F.R.D. 493, 503 (E.D. Cal. 2014) (quoting Abdullah v. U.S. Sec. Assocs., 731 F.3d 952, 957 (9th Cir. 2013)); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.").

Here, classwide proceeding would generate the common answer to whether defendant misclassified these plaintiffs, failed to pay for non-productive time, etc. "Because it therefore appears that the same alleged conduct of defendant would form the basis of each of the plaintiff's claims class relief based on commonality is appropriate." Murillo v. Pacific Gas & Elec. Co., 266 F.R.D. 468, 475 (E.D. Cal. 2010) (citation, quotation, and alteration omitted). Therefore, the court finds the commonality requirement satisfied.

**C. Typicality**

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Here, plaintiff and the class members were allegedly subjected to the same practices and miscalculations, resulting in the same or similar injuries.

Accordingly, the court finds the typicality requirement satisfied.

**D. Adequacy**

"To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." Hanlon, 150 F.3d at 1020. "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (quoting Hanlon, 150 F.3d at 1020).

Here, there is nothing before the court to suggest that the named plaintiff or class counsel has any conflict of interest with any class member. To the contrary, it appears that plaintiff has the same interest and injury as the other class members. And plaintiff's counsel are experienced litigators of class actions involving the precise claims here, i.e., wage and hour disputes involving truck drivers. See Martinez v. Knight Transportation, Inc., No. 1:16-cv-1730 DAD SKO, 2018 WL 6308110, (E.D. Cal. Dec. 3, 2018); Clayton v. Knight Transp., Inc., No. 1:11cv0735 LJO DLB, 2012 WL 2912395, (E.D. Cal. July 16, 2012).

Accordingly, the court finds the adequacy requirement satisfied.

**E. Rule 23(b)(3)**

Having satisfied the requirements for Rule 23(a), plaintiff must also satisfy at least one of the categories under Rule 23(b). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be

'superior to other available methods for the fair and efficient adjudication of the controversy.'" Amchem, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)).

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022 (quotation omitted). Here, plaintiff challenges defendant's uniform employment policies. "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." Goodwin, 2017 WL 3173006, at *7.

In analyzing superiority, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating the litigation in one forum, and potential difficulties in managing the class action-although the last two considerations are not relevant in the settlement context." Palacios v. Penny Newman Grain, Inc., No. 1:14-cv-1804 KJM, 2015 WL 4078135, at *6 (E.D. Cal. July 6, 2015).

Here, forcing class members to proceed individually on identical claims, in which the relief is relatively small, is antagonistic to the class members' interest. And the court is aware of no other litigation in progress. Accordingly, the court finds that a class action is superior to having the plaintiffs proceeding individually.

### F. Conclusion

Having considered the relevant factors the court finds that plaintiff has satisfied the requirements of Rule 23(a) and Rule 23(b)(3) and grants final approval of the class.

## II. Plaintiff's Motion For Final Approval of The Settlement

### A. Strength of Plaintiff's Case

In evaluating the strength of the plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of [the] litigation." In re Wash. Pub. Power Supply Sys. Secs. Litig., 720 F.Supp. 1379, 1388 (D. Ariz. 1989). Indeed, because no evidence has been presented and the "settlements were induced in large part by the very uncertainty as to what the outcome would be, had litigation continued" the

court could not do so.  Id.  Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."  Id.

Here, the court agrees that plaintiff "faced serious litigation risks that could have precluded the Class from obtaining any recovery." (Pl.'s Mot. FA (ECF No. 27) at 15.) Specifically, plaintiff would have faced:

> (1) the risk of three different forms of federal preemption of Plaintiff's misclassification, reimbursement, and/or meal and rest break claims; (2) the risk of losing on the merits on Plaintiff's misclassification and other claims; (3) the risk of non-certification; and (4) Defendant's potential insolvency which could preclude class recovery even if Plaintiff were to overcome these risks.

(Id.)

For example, in the absence of the settlement plaintiff's meal and rest break claims may have been found entirely preempted by order of the Administrator of the Federal Motor Carrier Safety Administration.  See California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption, 83 FR 67470-01 ("Accordingly, the FMCSA grants the petitions for preemption of the ATA and the SCRA, and determines that the MRB Rules are preempted pursuant to 49 U.S.C. 31141.  California may no longer enforce the MRB Rules with respect to drivers of property-carrying CMVs subject to FMCSA's HOS rules.").

Accordingly, this factor favors approving the settlement.

**B.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation; Risk of Maintaining Class Status**

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'"  Morales v. Stevco, Inc., No. 1:09-cv-00704 AWI JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011) (quoting Nat'l Rural Telecomms., 221 F.R.D. at 526).  "'[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation[.]'"  In re Syncor ERISA Litigation, 516 F.3d 1095, 1101 (9th Cir. 2008) (quoting Officers for Justice, 688 F.2d at 625).

Here, in support of the motion for preliminary approval, plaintiff offered the declaration of retired U.S. Bankruptcy Judge Mitchell Goldberg who opined that a "materially greater" recovery than that contemplated by the settlement would threaten defendant's "continued business operations." (Goldberg Decl. (ECF No. 16-6) at 4.) In this regard, had plaintiff pursued further litigation plaintiff faced the risk of three different forms of federal preemption, the risk of losing on the merits, the risk of non-certification, and defendant's possible insolvency. Instead, the parties have agreed to a reasonable, voluntary settlement that guarantees the class will receive compensation without further delay. Under these circumstances, this factor weighs in favor of approving the settlement.

### C. Amount Offered in Settlement

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Officers for Justice, 688 F.2d at 625. Moreover, "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529.

Here, the class consists of 123 truck drivers who will receive an average payment of $2,780.49 per class member, with a maximum payment of $4,389.91, based on a total net settlement of $342,000.000. (Pl.'s Mot. FA (ECF No. 27) at 7.) None of the Notices to the class were returned as undeliverable, and no class member opted out or objected to the proposed settlement. (Id. at 7, 11.) Moreover, the court finds that the amount of settlement weighs in favor of approving the settlement when compared to other comparable settlements. See, e.g., Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("$2600 per claimant net of all expenses, is a sizeable settlement in a wage and hour case involving low-income workers."). This factor weighs in favor of approving the settlement.

### D. Extent of Discovery and State of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecomms., 221 F.R.D. at 528 (citing City Partnership Co. v. Atlantic Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir.1996)). Here, defendant produced

> (1) a comprehensive spreadsheet that shows all of the California-based drivers during the putative class period containing five tabs, each one respectively containing: (a) a list of current drivers (at the time of mediation); (b) a list of former drivers; (c) a list of Defendant's drivers who do not have California licenses; (d) a list of drivers who contracted with Defendant for less than 90 days; and (e) a list of drivers who drove local loads; (2) a second spreadsheet including the electronic log data for the Class between December 2017 through the date of production; (3) a PDF containing copies of the settlement statements Plaintiff received during his employment with Defendants; (4) a PDF containing a summary of the payments that Plaintiff received in 2016; (5) a PDF containing a summary of the payments that Plaintiff received in 2017; (6) a PDF containing a copy of the Transportation Agreement that Plaintiff and other independent contractors signed during the class period.

(Pl.'s Mot. FA (ECF No. 27) at 20.) Defendant also provided various financial documents to Judge Goldberg so that Judge Goldberg could provide an objective, independent analysis of the reasonableness of the settlement. (Goldberg Decl. (ECF No. 16-6) at 3.) And the parties engaged in a full day of private mediation. (Pl.'s Mot. FA (ECF No. 27) at 19.)

Under these circumstances the court finds that the settlement was reached as the result of an arms-length negotiation with sufficient discovery. Accordingly, this factor weighs in favor of approving the settlement.

### E. Experience and View of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." In re Pacific Enterprises Securities Litigation, 47 F.3d 373, 378 (9th Cir. 1995). Accordingly, "'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" Nat'l Rural Telecomms, 221 F.R.D. at 528 (quoting In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D. N.Y. 1997)).

Here, "[p]laintiff's counsel has collectively represented hundreds of truck drivers in similar wage and hour cases." (Pl.'s Mot. FA (ECF No. 27) at 21.) Plaintiff's counsel views the settlement as fair, reasonable, adequate, and in the best interest of the class. (Id.) Accordingly, this factor weighs in favor of approving the settlement.

////

////

### F. Reaction of the Class

As noted above, "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529. Here, no class member requested to opt-out or objected to the settlement. (Dancy Decl. (ECF No. 27-1) at 3-4.) "By any standard, the lack of objection of the Class Members favors approval of the Settlement." In re Omnivision Technologies, Inc., 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008). Accordingly, this factor weighs in favor of approving the settlement.

### G. Possibility of Collusion or Conflicts of Interest

"[W]hen a settlement is negotiated absent class certification . . . . the district court abuses its discretion if it fails to apply 'an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e).'" Roes, 1–2 v. SFBSC Management, LLC, 944 F.3d 1035, 1043 (9th Cir. 2019) (quoting In re Bluetooth, 654 F.3d at 946). Subtle signs of collusion include: "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." Allen v. Bedolla, 787 F.3d 1218, 1224 (9th Cir. 2015).

The court's March 29, 2019 order noted that the parties' settlement contains a "'clear sailing agreement' in which defendant agrees not to object to the award of attorneys' fees." (ECF No. 21 at 9.) "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to . . . scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested." Roes, 944 F.3d at 1051 (quotation omitted).

Although the court will address plaintiff's motion for attorney's fees below, the court notes that requested attorney's fees amount to 20% of the settlement fund—well below the 25% benchmark. See In re Bluetooth, 654 F.3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"). And the compensation to the class under the terms

of the settlement consists solely of monetary compensation and is the result of a non-reversionary payment by defendant—reducing the risk that the value of the settlement was inflated. See Roes, 944 F.3d at 1056.

Moreover, the parties' settlement was reached as the result of private mediation before a neutral and "well respected wage-and-hour mediator, Frances 'Tripper' Ortman," and was informed and supported by the opinion of retired U.S. Bankruptcy Judge Mitchell Goldberg. (Pl.'s Mot. FA (ECF No. 27) at 9.) Under these circumstances, the court finds no collusion or conflict of interest.

### H. Conclusion

Upon consideration of all the relevant factors the court finds that the settlement is fair, adequate, and free from collusion. Plaintiff's motion for final approval of the class action settlement is granted.

## III. Incentive Award

As noted above, the proposed settlement includes a request for a $10,000 incentive award for plaintiff as class representative. "'Modest compensation may sometimes be merited for extra time spent by the class representatives in meeting with class members, gathering discovery materials on behalf of the class, and similar efforts.'" In re Domestic Air Transp. Antitrust Litigation, 148 F.R.D. 297, 358 (N.D. Ga. 1993) (quoting Manual for Complex Litigation § 30.41 n. 86 (2d ed. 1985)). In analyzing whether to exercise the discretion to order such an award the court looks to:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Van Vranken v. Atlantic Richfield Co., 901 F.Supp. 294, 299 (N.D. Cal. 1995).

As directed by the court, plaintiff's motion specifically addresses the propriety of this award. Plaintiff's motion recounts the considerable work plaintiff contributed to this action—amounting to approximately 100 hours—and is supported by plaintiff's declaration. (Pl.'s Mot.

FA (ECF No. 27) at 23; Bykov Decl. (ECF No. 27-2) at 2-4.) Under the circumstances presented here, the court will approve the requested award.

**IV.     Attorney's Fees and Costs**

Class counsel seeks a fee award of $95,000 and reimbursement for $12,000 in costs. (Pl.'s Mot. Atty. Fees (ECF No. 26) at 2.) "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth, 654 F.3d at 941. Where, as here, the settlement calls for the funding of a common fund "the district court has discretion . . . to choose either the percentage-of-the-fund or the lodestar method" to evaluate the reasonableness of the fee award. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

It is established that "25 percent of the fund" is the "benchmark . . . in common fund cases." Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). "The typical range of acceptable attorneys' fees under this approach in the Ninth Circuit is 20 percent to 33 and 1/3 percent of the total settlement value, with 25 percent considered a benchmark percentage." Schiller v. David's Bridal, Inc., No. 1:10-cv-0616 AWI SKO, 2012 WL 2117001, at *16 (E.D. Cal. June 11, 2012) (citing Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000)).

Even where the court uses the percentage method, "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." Vizcaino, 290 F.3d at 1050. Under the Lodestar approach, the starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1933). In assessing application for attorney's fees, the reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011). It is also the general rule that the "relevant legal community" is the forum in which the district court sits. See Gonzalez v. City of

Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013); Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010); Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citation and internal quotations omitted). "Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001)).

Ultimately, under either the percentage approach or the lodestar method the important inquiry is whether the award is reasonable. Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). In determining the reasonableness of an award the court can look to: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. Vizcaino, 290 F.3d at 1048-50. Consideration of these factors can require an upward or downward adjustment of the award.

Here, plaintiff's counsel seeks an award of $95,000—an amount equal to 20% of the gross settlement amount. (Pl.'s Mot. Atty. Fees (ECF No. 26) at 2.) The court finds this award to be fair and reasonable given the results achieved, the risk taken by counsel given the contingent nature of the representation, counsel's experience and skill, and the awards in similar cases. See, e.g., Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 492 (E.D. Cal. 2010) ("The Settlement's provision of $100,000 in attorney's fees (or approximately 33.3% of the total recovery obtained), is fair and reasonable in light of the good result achieved for Plaintiffs, the risk counsel took pursuing the matter, and the skill they exhibited prosecuting the case."); In re Omnivision, 559 F.Supp.2d at 1047 ("[I]n most common fund cases, the award exceeds th[e] benchmark."); In re Activision Securities Litigation, 723 F.Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method.").

Moreover, a roughly calculated lodestar crosscheck also finds that the fee request is fair and reasonable. See Schiller, 2012 WL 2117001 at *22 ("Where the lodestar is utilized as a cross-check, such a 'rough calculation' is appropriate."). As of the filing of the motion for attorney's fees counsel expended 188.9 hours of attorney time on this matter. (Pl.'s Mot. Atty. Fees (ECF No. 26) at 17.) That amount of time seems reasonable given the work involved in this action and there is no reason to believe counsel expended unnecessary time.

An award of $95,000 for 188.9 hours of attorney time results in an hourly rate of $502.91. That rate is reasonable for attorneys of similar skill and experience, appearing in like cases, in this district.[2] See Turk v. Gale/Triangle, Inc., No. 2:16-cv-0783 MCE DB, 2017 WL 4181088, at *4 (E.D. Cal. Sept. 21, 2017) (approving "$200 to $600 per hour depending on seniority"); Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc., No. 2:13-cv-0672 KJM KJN, 2015 WL 3622999, at *12 (E.D. Cal. 2015) (approving rates as high as $650). Moreover, because the motion for attorney's fees was filed well in advance, this calculation does not account for the hours of attorney time spent on the motion for final approval or the hearing of the motion for final approval.

Accordingly, for the reasons stated above, the court finds that the requested $95,000 for attorney's fees is fair and reasonable. Plaintiff's motion for attorney's fees will, therefore, be granted.

Plaintiff has also requested reimbursement for $12,000 in costs. (Pl.'s Mot. Atty. Fees (ECF No. 26) at 22.) "[I]n evaluating the reasonableness of costs, 'the judge has to step in and play surrogate client.'" In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act (FACTA) Litigation, 295 F.R.D. 438, 469 (C.D. Cal. 2014) (quoting Matter of Continental Illinois Securities Litigation, 962 F.2d 566, 572 (7th Cir. 1992)). Although the parties' settlement capped plaintiff's costs at $12,000, counsel's actual costs are greater. In light of this fact, and after reviewing counsel's expenses, the court finds them appropriate and reasonable. Accordingly, plaintiff's request for $12,000 in costs will be granted.

---

[2] Although a number of attorneys and a paralegal expended time of this action, the overwhelming majority of the hours expended were by attorneys with 7, 9, and 21 years of experience. (Ackermann Decl. (ECF No. 26-1) at 7.)

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's November 22, 2019 motion for final approval (ECF No. 27) is granted;

2. Plaintiff's August 20, 2019 motion for attorney's fees and costs (ECF No. 26) is granted;

3. The parties are ordered to act in accordance with the terms of the settlement agreement;

4. The court declines to maintain jurisdiction to enforce the terms of the parties' settlement agreement unless there is some independent basis for federal jurisdiction. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994) ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."); and

5. The Clerk shall enter judgment and close this case.

Dated: March 2, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.consent\bykov1691.class.final.approval.ord